IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

JAMES D. WYNNE,                               )
                                              )
                Plaintiff,                    )    TC-MD 170207R
                                              )
        v.                                    )
                                              )
MARION COUNTY ASSESSOR,                       )
                                              )
                Defendant.                    )    **FINAL DECISION**[1]

Plaintiff appeals Defendant's denial of his application for correction of maximum

assessed value, dated February 2, 2017, for the 2016-17 tax year.  A trial was held on

December 20, 2017, at the Oregon Tax Court.  James Wynne (Wynne) appeared and testified on

his own behalf.  Scott Norris appeared on behalf of Defendant.  Craig Myers testified as a

witness on behalf of Defendant.  Plaintiff's Exhibits 1 to 5 and 12 to 17 were admitted into

evidence without objection.  Defendant's Exhibits A to W were admitted into evidence without

objection.  The court previously denied Defendant's Motion to Dismiss and that Order is

incorporated into this Decision.

## I.  STATEMENT OF FACTS

Wynne testified that in April 2016 he purchased a single family residence (the subject

property) in Marion County for $265,000.  At the time of purchase the multiple-listing service

and the county records showed the living area for the subject property was 2,269 square feet.

(Ptf's Ex 1 at 2; Def's Ex F.)  Wynne received his 2016-17 property tax statement that showed

the real market value of the subject property was $332,990 and the maximum assessed value

---

[1] This Final Decision incorporates without change the court's Decision, entered June 26, 2018.  The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered.  *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

(MAV) was $290,230. Wynne testified that he felt his property was overvalued. He did some research and found the prior owner of the subject property added a sunroom in 2006. The sunroom addition was permitted and inspected by the city and was estimated to cost $35,000. (Def's Ex A at 2.) The sunroom was built at the rear of the house and integrated with the existing exterior design. (Def's Ex G to X.) The sunroom is accessible through a sliding glass door in the living room, but otherwise the sunroom is "thermally isolated" from the rest of the house. The sunroom has its own air conditioning, heating, a ceiling fan, and several windows to the outside. At the time the sunroom was built, the main area of the house was listed by Defendant at 1,973 square feet. (Ptf's Ex 3.) The area of the sunroom was 297 square feet. (Ptf's Ex 2.) In 2006, the county added the area of the sunroom to the square footage of the house and added exception value to the property. Sometime after Plaintiff's inquiries, Defendant changed its records to show the subject property has a "main area" of 1,969 square feet and an "enclosed porch," representing the sunroom, at 193 square feet. (Ptf's Ex 15.)

Wynne appealed his 2016-17 property tax assessment to the Marion County Board of Property Tax Appeals (BOPTA) and asked for a reduction of both the real market value and MAV. BOPTA reduced the real market value of the subject property to $265,000, but left the MAV unchanged. Wynne accepted the BOPTA order as to his real market value, and appealed the MAV on his theory that the MAV should have been reduced in the same proportion as the real market value. He also asserts that the sunroom is not living area and the MAV should be reduced due to an error in the county records that included the sunroom in the square footage.

/ / /

/ / /

/ / /

## II. ANALYSIS

The issue in this case is whether Plaintiff is entitled to a reduction in the MAV of the subject property based on a difference between the actual square footage of his property and the square footage of the property as shown in the county assessor's records.

The concept of MAV was created when voters passed Measure 50 in 1997. Pursuant to that initiative "[a]ll units of property were assigned a MAV for the 1997 tax year and later years equal to the real market value of the unit of property as of July 1, 1995, reduced by 10 percent." Henry C. Breithaupt & Jill A. Tanner, *The Oregon Tax Court at Mid-Century*, 48 Willamette L. Rev. 147, 185 (2011). Real property is taxed based on the lesser of the real market value or the MAV for each year. ORS 308.146(2)[2]. Prior to 2001, there was no specific statutory provision for reducing the MAV. Consequently, taxpayers had to rely on other legal theories. See, *Su v. Dept. of Rev.*, 15 OTR 305, 2001 WL 194664 (2001). In *Su*, taxpayers sought reduction of their MAV based on ORS 311.205 that allowed the court to correct clerical errors. Although acknowledging that the county records showed 1,599 more in square footage than the property actually had, the court found that county records did not have all of the information necessary to correct the error, and thus denied the relief sought by taxpayers. *Id*. at 308. As we will see in the legislative history section, it appears that ORS 311.234 was amended to allow for a MAV correction in response to the result in *Su*. In 2001, ORS 311.234 was amended to add, in part:

> "(2) The assessor shall correct the maximum assessed value of the property for the current tax year if, in the petition filed under this section, the petitioner demonstrates:
> (a) A difference between the actual square footage of the property as of the assessment date for the current tax year and the square footage of the property as shown in the records of the assessor for the tax year."

/ / /

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2015.

In this case, the parties dispute the meaning of the terms "actual square footage" and "square footage." Plaintiff argues that the terms mean "living area." Using that definition he argues that his sunroom is not living area and the assessor's records that include the area of the sunroom are in error. Plaintiff explains that the sunroom gets too hot in the summer, too cold in the winter, and is thermally isolated from the remainder of the house by a large sliding door. However, Plaintiff's own exhibits readily state that a sunroom can "be used to describe patio rooms, conservatories, porch enclosures, solariums and the like." (Ptf's Ex 12 at 1.) Or, in other words, the term sunroom could mean many different things, some that may not be included in square footage, such as some porch enclosures, and others that would. Defendant urges the court to interpret the terms to mean "all square footage associated with a property, regardless of valuation (be it basement, main floor, second floor, or in this case, sunroom.)" (Def's Post-trial Ltr, Jan 18, 2018.) In order to resolve the dispute, the court must follow the rules of statutory construction. When interpreting a statute, the court's "paramount goal" is "discerning the legislature's intent." *State v. Gaines*, 346 Or 160, 171 206 P3d 1042 (2009). The court will analyze the text, context, and legislative history to ascertain the meaning of ORS 311.234(2).

"[T]here is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *Id*. at 171 (internal quotation marks omitted). Thus, "text and context * * * must be given primary weight in the analysis." *Id*. "[W]ords of common usage typically should be given their plain, natural, and ordinary meaning." *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

ORS 311.234 does not define the terms "actual square footage" or "square footage of the property." Nor does any other statute in Oregon use the term "actual square footage." On its face, the term is ambiguous and could have the meaning that either Plaintiff or Defendant urges

the court to adopt. The often cited reference book, Appraisal Institute, *The Appraisal of Real Estate* (13th ed 2008), does not define the disputed terms, but does state the "widely accepted measurement standard for residential properties is *Square Footage-Method for Calculating; ANSI Z765-2003* (ANSI Standard)."[3] *Id*. at 236. The ANSI Standard describes the method for calculating square footage by using its exterior dimensions without inspection, but could also use an interior measurement, if disclosed. ANSI Standard at 2. One of the challenges in utilizing that text is the definitions are designed to be used for appraisals. However, in appraisals there can be differing calculations of ground level living area, below grade living area, areas such as garages which are not included in living area, and all of those areas could be identified and a value attributed to them separately. When we look at the terms as used for a MAV correction, those nuances are not part of the consideration. The ANSI Standard does not precisely define the terms in dispute and is of little assistance to the court for this analysis.

Similarly, the context of the statutory language is of no help. ORS 311.234 is unique in that it provides for the only means for the reduction of a property's MAV. Measure 50 contains no definitions of square footage of a property and originally had no provision for the reduction of MAV. Cases decided by this court also do not provide any guidance for the ambiguous terms. As of this date, there have been 22 cases in the Oregon Tax Court citing ORS 311.234. In each of those cases the county assessors either agreed that there was an error in the square footage and the parties argued over the resulting tax calculation, or the cases were summarily dismissed because plaintiff(s) had not filed their request for a MAV correction by the December 31st deadline per ORS 311.234(5). The *Su* case also does not provide any direct help. In that case, the square footage error was clearly not part of the living area and needed no analysis. Of the

---

[3] http://wemeasurehomes.com/p2df/ANSI_SINGLE_FAMILY_RESIDENTIAL_standard_ANSI_Z765-2003.pdf (webpage accessed May 24, 2018)

sources considered for context of the statute, perhaps the most helpful is OAR 150-311-0240 that is entitled "Procedure to Correct MAV When Square Footage Error Exists." That administrative rule is primarily about how to calculate the tax saving based on a square footage error in the county's tax roll. It does not on its face provide a meaning to the disputed terms. However, the examples show steps for correcting an error in the land only, land and buildings, or more than one building or structure. The text of the rule clearly suggests that the statutory terms were intended to correct more than just "living area" as Plaintiff contends. To the court, that interpretation makes sense as it is difficult to imagine that the legislature meant to allow a correction for living area only and not allow for a correction to other components such as land or accessory buildings. That factor is somewhat persuasive, but not conclusive, and thus a review of the legislative history is warranted.

Legislative history may include testimony, statements from legislators during committee hearings, and staff summaries. *Owens v. Maass*, 323 Or 430, 918 P2d 808 (1996). In looking at the history, it appears that the changes to ORS 311.234 began as broad proposed adjustments to Measure 50 as found in Legislative Concept (LC) 501, which became HB 2058. That bill included provisions, among others, for allowing the reassessment of properties. Representative Jerry Krummel testified during the public hearing on HB 2440 that the larger concept had little legislative support at the time and, thus, HB 2058 did not make it out of committee. Representative Krummel testified that a portion of HB 2058 was placed into HB 2440-2, using a process known in the legislative world as "gut and stuff," where the original contents of the bill were removed and the verbiage that became ORS 311.234(2) was added. The Staff Measure Summary to HB 2440-2 states that the bill would add language to ORS 311.234 to allow "changes in the maximum assessed value, in the future, for square footage errors on the county

tax roll," to provide proportional changes to the tax rolls and a deadline for taxpayers to request a change. *House School Funding and Tax Fairness/Revenue Committee*, HB 2440, May 23, 2001, Ex 4. The Staff Measure Summary also specifically identified the *Su* case as part of the background explaining the proposed changes. *Id*. Unfortunately, for this analysis, the hearing on the matter was brief and no definition of the ambiguous terms was discussed.

In its post-trial letter, Defendant presents legislative history from HB 2129 which amended ORS 311.234 in 2015. Defendant quotes Tom Linhares, representing the Oregon State Association of County Assessors: "As we implemented that statute it didn't make sense because not all square footages are equal. Basements are worth less than the main floor, second stories are worth less than the main floor, and it resulted in some screwy calculations of the maximum assessed value." Although the quoted language is interesting with regard to how county assessors viewed HB 2440, "[s]ubsequent statements [even by] legislators are not probative of the intent of statutes already in effect." *United Telephone Employees PAC v. Secretary of State*, 138 Or App 135, 139, 906 P2d 306 (1995). Thus, the legislative history of HB 2129 is of no assistance to the court in determining legislative intent with respect to HB 2440.

At first blush, the legislative history does not help to provide a definition of the disputed terms. However, in looking at the statutory scheme as a whole and the reasoning behind the changes to ORS 311.234, the court sees a pattern. Starting with Measure 50 we see a large legal change to the way real property is taxed. There were ways to fix clerical errors but no direct way to reduce MAV. Then the *Su* case was decided and we find a taxpayer that clearly has been taxed on property that does not actually exist, but cannot get relief because the court's power to fix clerical errors is limited. ORS 311.234 was amended to allow correction to the MAV so that it can be reduced when property does not exist. However, that does not fit the case here because,

as Defendant argued, and no reasonable person could dispute, the sunroom does exist. If the court were to remove the square footage of the sunroom and allow the MAV to be lowered proportionally, it would be the exact opposite of the problem the legislature tried to fix in the *Su* case. In such an instance, the county would not be able to tax all real property that actually exists. It does not seem likely that in helping taxpayers to correct a wrong as seen in the *Su* case, that the legislature intended to create a wrong to the counties. Rather, the *Su* case actually provides some lessons for situations such as the one in this case. When Plaintiff brought his concerns to the county, he obtained relief in two ways. First, the county fixed its clerical error by changing the living area from a total of 2,269 square feet and broke it down to 1,969 square feet for the "main area," and 193 square feet for the "Enclosed Porch." Even based on the *Su* holding, that is a correction of a clerical error that the county or the court could have adjusted. Second, Plaintiff sought and obtained a reduction in the real market value of his home from BOPTA based on his recent purchase of the property. Plaintiff asks for a reduction in his MAV based on the proportion that BOPTA reduced his real market value. However, this court has consistently held that there is no correlation between the reduction of real market value and MAV; rather MAV is a concept created by law that is set by mathematical formulas contained in statutes and rules. *See Gall v. Dept. of Rev.*, 17 Or Tax 352 (2004). That second basis is important because a correction to the real market value allows for taxpayers and taxing agencies to present appraisals that often have differing values for different types of building area. The parties acknowledged during trial that, for example a garage, would have a different value per square foot than the living area of the home. So, too, might the value of a sunroom be different than the living area of the home. In the court's view, this case is not about whether the sunroom at issue is living area, but whether it does exist and whether it has value to the property. Once

that question is answered, there is no statutory provision in ORS 311.234 for assessing specific value of the square footage – living or nonliving space.  The challenges and corrections to value are properly found in the appeal process for real market value.  If Plaintiff's position prevailed, then he would receive a windfall in that part of the improvements to his property would not be subject to tax.  Based on the text, context, and legislature history of ORS 311.234(2), the court concludes that the legislature intended the term "actual square footage" to be all square footage associated with a property regardless of its differential value.  Because Defendant's rolls contained the square footage of all of the area that existed, its records are not in error under ORS 311.234(2).

### III.  CONCLUSION

After careful consideration, the court concludes that there is no error in Defendant's records upon which the maximum assessed value should be adjusted.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of July, 2018.

 

 

RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Davis and entered on July 16, 2018.*

FINAL DECISION  TC-MD 170207R                                                                                    9